The Honorable Lauren King
Trial Date: February 17, 2026

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DOMINIQUE C. PAVAGEAU,<br><br>Pavageau,<br><br>v.<br><br>DELTA AIR LINES, INC.,<br><br>Defendant. | Case No. 2:24-cv-00332-LK<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Note on Motion Calendar:<br>January 16, 2026<br><br>WITHOUT ORAL ARGUMENT |

### I.   INTRODUCTION AND RELIEF REQUESTED

Plaintiff Dominique Pavageau ("Plaintiff" or "Pavageau") – a current Delta employee – was removed from Delta's Initial Qualification Training Program ("IQ Training"), also known as Flight Attendant Training, due to her persistent unprofessional conduct and her failure to adhere to Delta's core values. Rather than take responsibility for her own actions, Pavageau now seeks to impose liability on Delta – where none exists.

Her claims of national origin discrimination, disability discrimination, failure to accommodate, and retaliation (based on her release from IQ Training and failure to promote/hire)[1] are unsupported by law or fact.  Indeed, as detailed below, Pavageau admits that:  (1) her national

---

[1] Although Pavageau checked "Failure to promote me" in her form Complaint, during her deposition she confirmed that her failure to promote claims were encompassed in her retaliation claim. Deposition of Dominique Pavageau (Exhibit A to Declaration of Anne E. Reuben ("Reuben Dec.")) ("Pavageau Dep.") at 227:7-228:2., Therefore, Pavageau's failure to promote claims have not been treated as a separately pleaded claim. However, out of an abundance of caution, Delta has addressed any potential rebuttal arguments in Footnote 10 below.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 1
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

origin claim is based solely on her Seattle residency, not any protected characteristic; (2) she failed to engage in the interactive process with Delta; (3) no decisionmaker was aware of her alleged disability or protected activity; and (4) her pretext arguments rest entirely on her personal belief, not record evidence. Thus, even when viewed in the light most favorable to Plaintiff, the undisputed record establishes that summary judgment is proper, and pursuant to Federal Rule of Civil Procedure 56(a), this case should be dismissed in its entirety.

Pursuant to the Court's Standing Order, the parties met and conferred via telephone on November 13, 2025 regarding Defendant's Motion for Summary Judgment. During this meeting, Pavageau indicated that she was considering filing a voluntary dismissal of all claims. This statement served, in part, as the basis for the parties' request for an extension of the dispositive motion deadline. ECF 45. To date, Pavageau has not filed a voluntary dismissal of all claims, and therefore, this Motion follows.

## II.   STATEMENT OF FACTS

### A.   Pavageau is Accepted into Delta's IQ Training.

On July 31, 2017, Pavageau began working for Delta as a Ready Reserve[2] Cargo Agent and then transitioned to the Sky Club (also as a Ready Reserve Agent) in March 2018 in its Seattle-Tacoma International Airport ("SEA") operations. Declaration of Claire Kelley Nabors ("Nabors Dec.") ¶ 4. In March 2020, after successfully applying and interviewing for a flight attendant position, she entered Delta's six-week IQ Training[3] in Atlanta, Georgia. Pavageau Dep. at 68:2–7; 75:17–23; Reuben Dec., Ex. B.

As a Delta employee, Pavageau understood and acknowledged that acceptance into IQ

---

[2] Delta's Ready Reserve Agents are hired to provide supplemental workforce to support Delta's operations on a part-time basis. Nabors Dec. ¶ 4.

[3] IQ Training is an intensive, multi-week, in-person program for newly hired flight attendant candidates focused on safety and emergency procedures, customer service excellence, in-flight service, cultural competency, and regulatory compliance. This training culminates in practical, hands-on drills in simulators and mock flights to master skills like evacuation, first aid, difficult passenger management, and service delivery as well as written in-class testing. Anderson Dec. ¶ 5. IQ Training graduation requirements are therefore based on the flight attendant candidate meeting three equal components: (1) comportment (i.e., behavior or conduct); (2) class and academic testing; and (3) hands-on, in-plane learning. *Id.* IQ Training in August 2021 had six flight attendant coordinators and two IFSL leaders. *Id.* ¶ 9.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 2
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

Training was highly selective, as Delta aims to hold the highest service standards by hiring flight attendant candidates who prioritize safety and demonstrate professionalism, respect, and integrity. Declaration of Jennifer Anderson ("Anderson Dec.") ¶ 8; Pavageau Dep. at 67:3–25.

In accepting her offer as a Delta Flight Attendant Trainee, Pavageau acknowledged that she was required to comply with Delta's policies, including *Rules of the Road, The Way We Fly*, and *Delta's Code of Ethics and Business Conduct.* Anderson Dec., Ex. A and B. These policies are made available to all Delta employees and emphasize professionalism, respect, and integrity, and warn that certain misconduct may warrant termination. The *Rules of the Road* policy outlines Delta's core values, principles, and expectations of modeling leadership. Anderson Dec. ¶ 13, Ex. B. *The Way We Fly* also reiterates the Company's commitment to non-discrimination and non-retaliation. *Id* at ¶¶ 11-12. Pavageau admits that she reviewed and understood these policies. Pavageau Dep. at 69:9–20.

During her first week as a Flight Attendant Trainee, instructors noted concerns regarding Pavageau's professionalism, including making unfounded complaints about her colleagues and showing resistance to coaching and feedback. Pavageau Dep. at 77:7–78:5; 87:1–88:16; Anderson Dec. ¶ 15, Ex. C. Pavageau admits that she was coached on her conduct. Pavageau Dep. at 90: 21–24. At no time during IQ Training in March 2020 did Pavageau disclose any purported disability or request an accommodation. Anderson Dec. ¶ 16; Pavageau Dep. at 92:12–18. Due to the COVID-19 pandemic, on March 18, 2020, Delta suspended its IQ Training and Pavageau[4] returned to SEA as a Ready Reserve Customer Service Agent, supporting Delta's ticket counters and departure gates. Anderson Dec. ¶ 6; Nabors Dec. ¶ 5.

**B.    Pavageau's Unprofessional and Inappropriate Conduct Continues During Her Second Attempt at IQ Training.**

In Summer 2021, Delta resumed its IQ Training and recalled approximately 1,800 Flight Attendant Trainees in seniority order. Anderson Dec. ¶ 7. On August 23, 2021, Pavageau returned

---

[4] Also known as Pavageau's "first attempt" at IQ Training.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 3
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

to Delta's Atlanta facility to continue the IQ Training. *Id.* at ¶ 17; Pavageau Dep. at 92:19–93:20; 97:2–98:3. At that time, Pavageau admitted she was also working a second job at Seattle Public Schools.[5] Pavageau Dep. at 47:11–17.

From the beginning of her second attempt at IQ Training, Pavageau exhibited unprofessional behavior that did not align with Delta's standards. Anderson Decl. ¶¶ 18-20. On August 28, 2021, for example, IQ Training Coordinators, who are also trained flight attendants, coached Pavageau for failing to adhere to Delta's uniform guidelines. *Id.*; Pavageau Dep. at 123:1–124:7. That same day, when asked to read a portion of a manual during class, she responded, "I don't want to read." Anderson Dec., Ex. D. In response, the instructor reminded Pavageau that composure and professionalism are essential for Flight Attendants. *Id.*; Pavageau Dep. at 126:5–22

Two days later, on August 30, 2021, Delta received a complaint from a third-party shuttle driver, who reported that Pavageau engaged in loud, inappropriate behavior toward him when he informed her that the shuttle could not depart earlier than scheduled. Anderson Dec., Ex. D. Pavageau then stormed back to her seat while muttering under her breath. *Id.*

On August 31, 2021, Delta's In-Flight Service Learning ("IFSL") Program Manager Jennifer Anderson and IFSL Operations and General Manager Timithia Cofer met with Pavageau to address these concerns and issued Pavageau an Informal Verbal Coaching.[6] Anderson Decl. ¶ 19, Ex. D; Pavageau Dep. at 140:16–24. Again, at no time during this meeting did Pavageau disclose any purported disability or request an accommodation. Anderson Dec. ¶ 20.

In her written response the next day, Pavageau admitted her conduct toward the shuttle driver was "perceived" "as distasteful" and if she could "re do" the incident, she would have kept her comments to herself. Anderson Decl., Ex. E. Pavageau further acknowledged that her classroom

---

[5] Pavageau sought and obtained Paid Family Medical Leave from the State of Washington and submitted Family Medical Leave Act of 1990, as amended, paperwork to her doctor claiming she needed time off to assist her son academically—while simultaneously attending Delta's full-time IQ Training in Atlanta (while her son remained in Seattle). Pavageau Dep. 100:1–104:22; Reuben Dec., Ex. C.

[6] Coachings, such as the Informal Verbal Coaching that Pavageau received, do not impact the terms and/or conditions of one's employment. Rather, they are designed to proactively address issues that, if continued, could affect a Flight Attendant Trainee's performance record. Anderson Dec., Ex. B, p. 1.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 4
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

conduct was inappropriate. *Id.;* Pavageau Dep. at 140:16–24. She also confirmed that Delta's expectations were clear and committed to improving her professionalism. Pavageau Dep. at 142:6–12. Indeed, after this meeting with IFSL leadership, Pavageau was not pulled out of class again for coaching. Pavageau Dep. at 142:6–12.

### C. Delta Released Pavageau from IQ Training After She Failed to Improve Her Conduct.

Despite the August 31, 2021 Informal Verbal Coaching, Pavageau's inappropriate and unprofessional conduct continued. Anderson Dec. ¶ 21. On September 29, 2021, Delta received *multiple* complaints describing her as dishonest, "erratic and unpredictable," a "bully," and a "danger and liability to crew members, passengers, and Delta Air Lines." *Id.* at ¶ 22, Ex. F. In addition to these complaints, Pavageau arrived late for training twice, failed to bring her cell phone (which was needed for system access), and moved out of company-provided housing without notifying leadership, as required. *Id.* at ¶ 25.

Due to the ongoing issues with her performance and conduct, IFSL leadership determined that Pavageau failed to comport her conduct to Delta's core values. *Id.* at ¶¶ 22-27. Indeed, Pavageau also *admitted these violations* in a written statement. *Id.* Ex. G. Thus, even though Pavageau completed the IQ Training hands-on learning component and passed the testing – all without an accommodation – Delta determined that her removal from IQ Training was warranted. Anderson Dec. ¶ 27. After her release, Pavageau returned to her position as Customer Service Agent in the Company's SEA operations, supporting the ticket counters and departure gates. Anderson Dec. ¶ 29; Nabors Dec. ¶ 6.

### D. Pavageau Requested an Accommodation but Failed to Participate in the Interactive Process.

Delta is committed to full compliance with the Americans with Disabilities Act ("ADA") and has a program to address accommodation requests. Declaration of Henrietta Archie ("Archie Dec.") at ¶¶ 2–5, Ex. A. As such, any employee who requests an accommodation is directed to

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 5
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

contact Delta's Accommodations Department, which then works closely with the employee and her doctor to obtain the necessary medical documentation needed to certify the employee's medical condition, including any restrictions. *Id.* Once the medical restriction and duration is identified, the employee, a Delta Accommodations Manager, and Delta leadership work together to identify a reasonable accommodation (to the extent practicable) that would allow the employee to perform the essential functions of her job while also complying with medical restrictions. *Id.* Pavageau admitted that she had seen Delta's accommodation guidelines and understood Delta's accommodation process set forth therein. Pavageau Dep. at 169:1–171:15.

On August 30, 2021, Pavageau contacted Delta's Accommodations Department to request an accommodation for anxiety during IQ Training. Pavageau Dep. at 172:2–15; Reuben Dec., Ex. D. Specifically, she requested one-on-one mock-up and constructive feedback to be provided at the end of each class day. Pavageau Dep. at 168:2–14; Reuben Dec., Ex. D. That same day, Delta provided Pavageau the required paperwork for an accommodation and advised that a Program Manager would contact her in two to three weeks after submission. Reuben Dec., Ex. D. Pavageau returned the paperwork on September 3, 2021.[7] Pavageau Dep. at 177:24–178:19; Reuben Dec., Ex. E.

On September 23, 2021, Workplace Accommodations Manager Henrietta Archie left a voicemail for Pavageau. Pavageau Dep. at 191:25–192:11; Reuben Dec., Ex. F; Archie Dec. ¶ 8. The next day, Ms. Archie sent a follow-up email to Pavageau's Delta e-mail address (i.e., the same email address used to submit her accommodation request), again asking her to respond as soon as possible. Archie Dec. ¶ 9, Ex. B

Pavageau understood her duty to engage in the accommodation process but never returned Ms. Archie's calls or emails and never contacted anyone in Delta's Accommodations Department again. Pavageau Dep. at 193:21–22; 197:22–198:1; Archie Dec. ¶¶ 9–10. At no point did Pavageau

---

[7] Notably, during discovery, Pavageau failed to produce any correspondence with her healthcare provider regarding completing her ADA accommodation paperwork, despite admitting she sent it to her doctor via MyChart and was able to access and produce other MyChart documents during the same timeframe. Pavageau Dep. at 179:6–187:21.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 6
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

disclose any purported disability to IFSL leadership or any IQ Training Coordinators or request an accommodation from them. Pavageau Dep. at 176:15–21. What is more, Flight Attendant Trainees, including Pavageau, learned about Delta's accommodation process within the first three days of IQ Training. Anderson Dec. ¶ 27.

### E. Pavageau Admits that She Has No Evidence to Support Her Retaliation Claim, As She Returned to a Customer Service Agent Role Upon Her Release from IQ Training and Delta Continues to Employ Her to Date.

After her removal from IQ Training, Pavageau took short-term disability leave until March 1, 2022. Archie Dec. ¶ 11. Then, on or about March 23, 2022, Pavageau filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming disability discrimination related to her accommodation request on August 30, 2021 and Delta's decision to suspend her from IQ Training ("First EEOC Charge"). Pavageau Dep. at 213:13–23; Reuben Dec., Ex. H.

Pavageau further alleged that, beginning in June 2022, she applied for several positions with Delta but was not selected because she was being retaliated against for filing the First EEOC Charge. Pavageau Dep. at 227:7–23. On or about January 9, 2023, Pavageau filed a second Charge of Discrimination with the EEOC, claiming she applied for the following additional positions but was not selected because she had previously filed the First EEOC Charge ("Second EEOC Charge"):

| Application Date | Position |
|---|---|
| March 13, 2021 | Agent In Charge[8] |
| May 13, 2022 | Red Coat/Passenger Service Agent |
| May 27, 2022 | Sky Club Ambassador |
| October 5, 2022 | Red Coat/Passenger Service Agent |
| November 30, 2022 | Red Coat/Passenger Service Agent |

---

[8] Pavageau's alleged March 13, 2021 application to an Agent in Charge position pre-dates her March 2022 Charge by over a year and thus the fact that she was not selected for that position cannot form the basis of a retaliation claim.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 7
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

| January 9, 2023 | Seattle Training Team |

However, Pavageau admits she has nothing more than her personal belief to support that she was not selected for other Delta positions because of the First EEOC Charge. *Id.* at 231:20–232:3. In fact, the evidence shows Delta did not select Pavageau for these positions[9] because the position was either filled by candidates from an earlier posting, she lacked the preferred qualifications or experience, or she withdrew her application. *Id.* ¶ 8; Nabors Dec. ¶ 11. There is no record in her application files indicating that she requested or required a medical accommodation or that she filed the March 2022 Charge. Firmanchuk Dec. ¶ 9. Pavageau did not tell any hiring managers about either EEOC Charge,[10] nor does she have any evidence that the hiring managers knew about either EEOC Charge. *Id.* at 230:18–25. Similarly, there is no evidence that any hiring manager knew of her prior accommodation request. *Id.*; Nabors Dec. ¶¶ 12–13.

What is more, Delta has a strict non-retaliation policy; and in line with such, none of the hiring managers or Talent Acquisition personnel for these roles were informed by Delta that Pavageau had filed either EEOC Charge or that she requested a medical accommodation in August 2021. Nabors Dec. ¶ 12.

On or about May 18, 2023, Delta offered Pavageau an Elite Services Ambassador position at LAX, which she accepted. Pavageau Dep. 232:19–233:12; Reuben Dec., Ex. J. Pavageau remains employed by Delta, although she has been on extended leave since August 2023 due to an unrelated,

---

[9] The May 13, 2022 Red Coat/Passenger Service Agent, May 27, 2022 Sky Club Ambassador, and January 9, 2023 Seattle Training Team positions in the above chart were filled through Delta's location-level Expression of Interest ("EOI") process (SEA), as opposed to through Delta's Talent Acquisition Department. Nabors Dec. ¶¶ 7–10. The EOI process is typically used by ACS to fill specialty ACS positions within a station or department and the ACS hiring manager for each EPO determines which candidates with be interviewed and makes the final hiring decision. *Id.* Pavageau also applied for other roles through Delta's MyDeltaCareers.com after filing the First EEOC Charge, including the October 2022 Passenger Service Agent (Red Coat) in the above chart, where Delta's Talent Acquisition Team assists with candidate screening. Firmanchuk Dec. ¶ 8. Delta's Talent Acquisition Team does not have access to internal applicants' personnel or accommodation files. *Id.* ¶ 4.
[10] The First EEOC Charge and Second EEOC Charge collectively are referred to as "EEOC Charges."

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 8
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

1  alleged disability.[11] Pavageau Dep. 64:8–65:4.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). The non-moving party may not rely on "mere allegations or denials;" rather, to reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. There cannot be a genuine issue of material fact "where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc.* 90 F.3d 1477, 1481 (9th Cir. 1996)).

## IV. ARGUMENT AND AUTHORITY

### A. Pavageau's Title VII National Origin Discrimination Claim Is Baseless.

Pavageau's national origin claim is premised upon her residency in Seattle. In fact, when questioned about this claim, Pavageau stated as follows:

> Q. So your claim – your national origin claim . . . is based on the fact you believe you were discriminated against because you were from Seattle?
>
> A. Correct.
>
> Pavageau Dep. at 19:16–20:14

---

[11] From August 2023 to present, Pavageau had worked full time for Seattle Public Schools, which raises serious questions about the legitimacy of Pavageau's leave request. During her deposition, Pavageau testified that the basis for her leave request is based on a thyroidectomy completed in August 2023. Pavageau Dep. at 63:7 – 23.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 9
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

Despite Pavageau's belief, Seattle is not a protected class in a national origin discrimination *See Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 154 F.3d 1117, 1119 (9th Cir. 1998)(citing *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973)) (The Ninth Circuit has recognized legal precedent that the "term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."). Given Pavageau's admission and her failure to identify correlation between her national origin and the challenged conduct, this claim should be dismissed outright.

If, however, this Court believes further inquiry is warranted, this claim still fails because Pavageau has not presented any evidence that she was qualified for the position to which she applied, including as a Flight Attendant, or that similarly situated individuals outside her protected class were treated more favorably. *See Lui v. DeJoy*, 129 F.4th 770, 777 (9th Cir. 2025) (noting that to establish a *prima facie* case, a plaintiff must raise a triable issue that she belonged to a protected class, she was qualified for her position, she was subjected to an adverse employment action, and that similarly situated individuals outside her protected class were treated more favorably). Given these additional shortcomings with this claim, summary judgement is warranted.

### B.     Pavageau's Disability Discrimination Claim Lacks Merit.

Although not clearly articulated in her Complaint nor during discovery, it appears Pavageau believes the decision to remove her from IQ Training was because of her claimed disability.[12] Like her other claims, this claim lacks merit. To establish a *prima facie* disability discrimination claim, a plaintiff must establish that: 1) she is disabled within the meaning of the ADA; 2) she is qualified for the position at issue (i.e., that she can perform the essential functions of the position with or without a reasonable accommodation); and 3) she suffered an adverse employment action because of the disability. *See Mickealson v. Cummins, Inc.*, 792 Fed. Appx.

---

[12] The two types of disability discrimination claims are: failure to accommodate and disparate treatment. *See Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005) (citing *Poe v. Waste Connections US, Inc.*, 371 F. Supp. 3d 901, 909 (W.D. Wash. 2019). Although not pleaded in her Complaint, it appears through discovery that Pavageau has attempted to assert both claims. Given her *pro se* status, Delta has addressed both claims herein.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 10
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

438, 440 (9th Cir. 2019) (citations omitted) "To withstand a motion for summary judgment on an ADA claim, a plaintiff must either provide sufficient direct evidence of an employer's discriminatory intent, or give rise to an inference of discrimination by satisfying the burden-shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Id.* (citation omitted). Not only is Plaintiff unable to make the requisite threshold showing, but she also has no direct evidence of discrimination, much less anything to suggest the proffered reason for removing her from IQ Training was pretextual.

Indeed, as noted above, Pavageau has offered nothing to support the first element of her *prima facie* case that she is disabled due to anxiety – the alleged basis for her accommodation request during IQ Training. Pavageau Dep. at 172:2–15; Reuben Dec., Ex. D**.** For this reason alone, this claim should be dismissed. *Mickealson* 792 Fed. Appx. at 440. Further, Pavageau offers nothing to support that she was qualified to graduate from IQ Training. Even though she was able to pass the hands-on learning and testing components, Pavageau's unprofessional conduct throughout her training failed to meet the comportment requirement for graduation, which ultimately resulted in Delta's decision to release her from IQ Training.

However, even assuming *arguendo* that Pavageau could somehow satisfy this evidentiary threshold, this claim would still fail because she admittedly cannot rebut Delta's legitimate, non-discriminatory reason for releasing her from IQ Training. More specifically, Pavageau admits: 1) no one within IQ Training was aware of her disability or accommodation request; 2) she engaged in some of the identified misconduct; and 3) she only has her own unsupported personal beliefs to rebut Delta's proffered reason for removing her from training. Pavageau Dep. at 176:15–21; 231:20–232:3; 140:16–24; Andreson Dec. Ex. G. Thus, given these shortcomings in Pavageau's claim, it likewise should be dismissed.

    **C.**    **Pavageau's Admitted Failure to Engage in the Interactive Process Warrants Dismissal of Her ADA Claim.**

To sustain a failure to accommodate claim under the ADA, Pavageau must show that she has

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 11
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

a disability as defined by the ADA; was qualified to perform the essential functions of her job; gave the employer notice of the disability and limitations; and upon notice, the employer failed to adopt measures available to accommodate the disability. *Golafale v. Swedish Health Servs.,* No. C14-1683JLR, 2016 WL 1367366, at *11 (W.D. Wash. Apr. 5, 2016) (citing *Austin v. Boeing Co.,* No. C12-0263MJP, 2013 WL 230824, at *4 (W.D. Wash. Jan. 22, 2013). Relevant here - both the employer and employee must engage in good faith in an interactive process to clarify what the employee needs as an appropriate accommodation. *Goos v. Shell Oil Co.*, 451 Fed. Appx. 700, 702 (9th Cir. 2011) (unpublished). The employer's participation in the interactive process is necessary, but the employee's participation is equally as important. *Id*. Where the interactive process breaks down due to the employee's failure to engage, the employer cannot be held liable for failure to accommodate. *See Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 743 (9th Cir. 2011) (holding that the employer could not be liable for failure to engage in the interactive process where the employee caused the breakdown in that process); *see also Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 102 Cal.Rptr.2d 55, 68 (2000) (an employee cannot prevail on a FEHA failure-to-accommodate claim where the evidence establishes that "the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith").

There is no dispute that Pavageau did not engage in the interactive process. Indeed, Pavageau admits: (1) she received a phone call from Ms. Archie in Delta's Accommodation Department, to engage in the interactive process regarding Pavageau's accommodation request; (2) she never called Ms. Archie back or attempted to engage in the interactive process with anyone else at Delta; and (3) she never discussed her requested accommodations with her IQ Training instructors or any other disability-related concerns. In light of Pavageau's admissions, summary judgment is likewise warranted on this claim as it was her own admitted failure to engage in the interactive process that impeded Delta's ability to explore potential reasonable accommodations with her.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 12
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

### D. Pavageau Has No Evidence to Support Her Claims of Retaliation.[13]

"To establish a prima facie case of retaliation… a plaintiff must show that (1) he or she engaged in or was engaging in activity protected . . . (2) the employer subjected him or her to an adverse employment decision, and (3) that there was a causal link between the protected activity and the employer's action." *Steenmeyer v. Boeing Co.*, 92 F. Supp. 3d 1024, 1031 (W.D. Wash. 2015). If an employee succeeds in establishing a *prima facie* case of retaliation, the burden then shifts to the employer to offer a legitimate, non-discriminatory explanation for the employee's termination from employment. "If Defendant does, the burden shifts back to the plaintiff to show that Defendant's explanation is pretext for discrimination or retaliation." *Erickson v. Biogen, Inc.*, 417 F. Supp. 3d 1369, 1378 (W.D. Wash. 2019). "Moreover, to satisfy the causal link for a retaliation claim under either Title VII or the ADA, a plaintiff must show that desire to retaliate was the but-for cause of the challenged employment action." *McGinn v. Hawaii Symphony Orchestra*, 727 F. Supp. 3d 915, 944 (D. Haw. 2024) (internal citation omitted).

#### 1. Pavageau Cannot Establish a Causal Connection Between Her Accommodation Request and the Decision to Remove Her from IQ Training.

First, to the extent Pavageau's request for an accommodation based on a purported disability constitutes protected activity, this claim fails because Pavageau cannot raise a triable issue of causal connection between her disability accommodation request and her suspension from IQ Training in September 2021. Notably, Pavageau admits that she never informed her instructors or IFSL leadership (specifically Jennifer Anderson or Timithia Coffer, who suspended her from IQ Training) about her alleged disability or her request or need for an accommodation. Pavageau Dep. at 176:15–21; Anderson Dec. ¶ 27; *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) ("Essential

---

[13] Again, through discovery, it was clarified that Pavageau's failure to promote claims are encompassed within her claims of retaliation and are not a separate and distinct claim. Pavageau Dep. at 227:7-228:2 Nevertheless, as noted above, even if Pavageau's claims could be construed as pleading a separate and distinct failure to promote claim, it would likewise fail, as she has failed to provide any evidence that: 1) she belongs to a protected class; (2) she applied for and was qualified for the position she was denied; (3) she was rejected despite her qualifications; and (4) the employer filled the position with an employee not of Pavageau's class, or continued to consider other applicants whose qualifications were comparable to Pavageau's after rejecting Pavageau. *Dominguez-Curry*, 424 F.3d 1027 at 1037.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 13
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."). Moreover, there is simply no evidence that her August 30, 2021 accommodation request, directed to Delta's Accommodation Department and not Pavageau's IQ Training instructors or IFSL leadership, played any role in Delta's decision to suspend Pavageau from IQ Training on September 30, 2021 due to her persistent inappropriate and unprofessional conduct. This lack of evidence of any causal connection is underscored by the fact that, at no point during the September 30, 2021 suspension meeting, or in Pavageau's subsequent responsive statements, does Pavageau mention – nor does the IFSL leadership raise – her alleged disability or accommodation request. Pavageau Dep. at 165:16–166:4; Anderson Dec., Ex. G. Accordingly, Pavageau's retaliation claim related to her release from IQ Training fails as a matter of law.

Even if Pavageau could raise a triable issue as to her *prima facie* case, Delta's legitimate, non-retaliatory, non-pretextual reason for her suspension detailed above prevents her from showing pretext. The Ninth Circuit has long held that performance-related issues are a legitimate non-discriminatory reason for an adverse employment action. *See Del Castillo v. Dept. of Health & Human Services*, 304 Fed. Appx. 607, 609 (9th Cir. 2008) (unpublished). Here, Delta has documented conduct and professionalism issues related to Pavageau's first attempt at IQ Training in March 2020, which, not surprisingly, carried over to her August-September 2021 second attempt at IQ Training. Anderson Dec. ¶¶ 16, 18–24, Exs. C–F.

These issues in both Pavageau's first attempt and second attempt at IQ Training, include policy violations, unprofessionalism, and approximately seven peer complaints, which raised serious concerns about Pavageau's integrity, trustworthiness, and whether she could uphold Delta's core values as a Flight Attendant. Pavageau has no evidence from which a jury could conclude that these ongoing conduct issues, highlighted by the numerous peer complaints on the eve of graduation, were not Delta's actual reason for her suspension, let alone that her suspension was in retaliation for requesting an accommodation for a purported medical condition that she had since abandoned. This lack of evidence is further underscored by Pavageau's admission that she understood she was

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 14
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300

required to abide by Delta's policies and procedures, that Delta has high standards for its Flight Attendants, and that she received verbal warnings, coachings, and peer complaints of bullying. Given these facts, summary judgment is warranted on this claim.

    **2.    Pavageau Cannot Establish a Causal Connection Between Her First EEOC Charge and Delta's Challenged Hiring Decision.**

Similarly, Pavageau's claim that Delta failed to hire/promote her because of her March 2022 Charge is without merit. Indeed, Pavageau admits that there is no evidence that the hiring managers for the positions she was not offered between March 2022 and January 2023 knew of her protected activity nor did she inform any of them. *Cohen*, 686 F.2d at 796. Absent any evidence of knowledge on the part of the Delta decision-makers of Pavageau's protected activity, Pavageau's claim fails as a matter of law. Moreover, Delta had a legitimate, non-retaliatory reason for not selecting Pavageau for each position at issue. The lack of any retaliatory motive is further evidenced by the undisputed fact that Delta offered Pavageau—and Pavageau accepted – an LAX-based Elite Services Driver position in May 2023, a position to which she applied and accepted. Accordingly, Pavageau's retaliation claim based on her filing the First EEOC Charge thus fails as a matter of law.

### V.    CONCLUSION

Based on the foregoing, Delta Air Lines, Inc. respectfully requests that the Court grant its motion for summary judgment and dismiss any claim for emotional distress.

Dated:  December 19, 2025

*I certify this memorandum contains 5,277 words, in compliance with the Local Civil Rules.*

/s/Anne E. Reuben
Anne E. Reuben, WSBA #53299
areuben@littler.com
Nina Stroescu, WSBA #60361
nstroescu@littler.com
LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
Telephone:   206.623.3300

Attorneys for Defendant

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 15
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington  98101.3122
206.623.3300

# CERTIFICATE OF SERVICE

I am a resident of the State of Washington, over the age of eighteen years, and not a party to the within action. My business address is One Union Square, 600 University Street, Suite 3200, Seattle, Washington 98101. I hereby certify that on December 19, 2025, I electronically filed the foregoing document(s) with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following individual who has opted in for e-service:

**Pro Se Pavageau**

Dominique C. Pavageau
4036 S Holly St.
Seattle, WA 98118
Tel: (206) 928-1233
Domthe10@icloud.com

I certify under penalty of perjury under the laws of the United States and of the State of Washington that the foregoing is true and correct.

Dated December 19, 2025.

*s/ Karen Fiumano Yun*
Karen Fiumano Yun
kfiumano@littler.com
**LITTLER MENDELSON, P.C.**

4937-1862-6670 / 105518.1028

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 16
CASE NO. 2:24-CV-00332-LK

LITTLER MENDELSON, P.C.
Attorneys at Law
One Union Square
600 University Street, Suite 3200
Seattle, Washington 98101.3122
206.623.3300